**Arthur J. LARSON, pro se, Plaintiff,**

v.

**Lawrence MULCRONE, Max Fritschel and Donald Shiflet, Defendants.**

No. 81 C 4197.

United States District Court,
N.D. Illinois, E.D.

April 1, 1982.

Arthur J. Larson, Joliet, Ill., for plaintiff.

Stephen Kehoe, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Arthur J. Larson brings this *pro se* action pursuant to 42 U.S.C. § 1983 asserting the jurisdiction of the Court under 28 U.S.C. § 1343(3). Alleging violations of his federal constitutional rights, he seeks declaratory, injunctive, and monetary relief from defendants Lawrence Mulcrone, investigating agent for the Illinois Department of Law Enforcement ("IDLE"); Max Fritschel, deputy director of the IDLE; and Donald Shiflet, a retired correctional captain at the Stateville Correctional Center. Before the Court is the motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure of defendant Mulcrone, the only defendant to be served.[1] For the reasons that follow, the motion is granted.

Plaintiff currently is a prisoner at Stateville serving a sentence of fifteen to twenty years on an armed robbery conviction. The complaint in this action stems from a letter which Fritschel sent to prison officials for placement in plaintiff's institutional file. The purpose of the letter was to inform prison and parole board officials that plaintiff had made threats against an IDLE agent and his family just prior to his sentencing. Plaintiff alleges that the information contained in the letter is false and that Shiflet arbitrarily used it to increase his security classification. Plaintiff further alleges that Mulcrone was the source of the false information. Plaintiff contested the accuracy of the information through the prison grievance procedure without success.

Plaintiff's claim against Mulcrone is premised solely on the allegation that Mulcrone was the source of the allegedly false accusations disseminated by Fritschel. The parties agree that after *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), Mulcrone cannot be held liable under section 1983 for any injury to plaintiff's reputation. Plaintiff contends, however, that under state law he had an entitlement interest in his security classification that required the protection of the due process clause. He further contends that defendants violated his right to due process by increasing his security classification without first affording him a hearing to contest the information provided by Fritschel.

■ Not every injury in which a state official has played some part is actionable under section 1983. *Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980). To establish liability, plaintiff must allege and prove that the official's conduct "caused" a deprivation of his federal constitutional rights. *Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979). Even with the liberal construction accorded *pro se* pleadings under *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the complaint fails to causally connect Mulcrone to the alleged infringement of plaintiff's due process rights.

■ Plaintiff's claim of constitutional injury is based on the arbitrary manner by which Shiflet reclassified him. Mulcrone, however, is not alleged to have had any authority over the procedures for making classification decisions at Stateville. The only connection alleged between Mulcrone and the reclassification of plaintiff is Shiflet's reliance upon information which purportedly originated with Mulcrone. Given that Mulcrone did not personally communicate any information to Shiflet, the link between Mulcrone's allegedly tortious accusations and Shiflet's failure to provide plaintiff with a hearing prior to increasing

---

1. Plaintiff directed the United States Marshal to serve the other two defendants at their places of employment. The summonses were returned unexecuted with notations that defendants no longer worked for the agencies by whom they were employed at the time relevant to the allegations of the complaint.

his security classification is too attenuated to establish liability against Mulcrone. *See Margoles v. Tormey,* 643 F.2d 1292, 1299 (7th Cir.), *cert. denied,* 452 U.S. 939, 101 S.Ct. 3082, 69 L.Ed.2d 954 (1981); *Bonner v. Coughlin,* 545 F.2d 565, 567 (7th Cir. 1976) (en banc).

Our inquiry is not concluded with the finding that the complaint fails to state a claim for relief against Mulcrone. In two recent cases, the Seventh Circuit cautioned against premature dismissal of *pro se* actions in which a failure to acquire service over defendants against whom the complaint may state a potentially viable claim for relief is attributable to the plaintiff's lack of legal training. *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir.1981); *Maclin v. Paulson,* 627 F.2d 83 (7th Cir.1980). Plaintiff's due process claim against the remaining defendants, Shiflet and Fritschel, turns upon his contention that under state law he has a protectible "liberty" interest in his prison security classification. This issue is fully addressed in the briefs before the Court. Therefore, before taking any measures to assist plaintiff in obtaining service over Shiflet and Fritschel, the Court will determine whether plaintiff's claim for relief against them is cognizable under section 1983.

■ It is well settled that an inmate has no constitutional right to a particular classification status. *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976); *Solomon v. Benson,* 563 F.2d 339, 342 (7th Cir.1977). Thus, any liberty interest that plaintiff may have in his prison security classification must be accorded to him by state statute or official policy. *See Durso v. Rowe,* 579 F.2d 1365, 1369 (7th Cir.1978), *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979). Plaintiff argues that Ill.Rev.Stat.1979, ch. 38, § 1001–1–2(c) and Illinois Department of Corrections Administrative Regulation 802 ("A.R. 802") create the necessary entitlement to provide the predicate necessary to trigger due process protections.

■ Ill.Rev.Stat.1979, ch. 38, § 1001–1–2 sets out the general purposes of the Illinois Code of Corrections. The specific statutory subsection cited by plaintiff describes one of those purposes as the prevention of "arbitrary or oppressive treatment of persons adjudicated offenders and delinquents." A general policy statement such as this, however, clearly does not give rise to a protectible "liberty" interest of entitlement. *See Arsberry v. Sielaff,* 586 F.2d 37, 48 (7th Cir.1978). To create an entitlement, the state law or regulation must confer upon the prisoner a reasonable expectation that he will not be deprived of some tangible benefit in the absence of certain specified events. *See Meachum v. Fano,* 427 U.S. 215, 226–27, 96 S.Ct. 2532, 2539–40, 49 L.Ed.2d 451 (1976).

■ Plaintiff further contends that A.R. 802 confers upon him an entitlement interest in his prison security classification. A.R. 802, which governs Institutional Assignment Committees, essentially sets forth procedures for assigning and reassigning inmates to work, training, and study programs. The only provision of the regulation that directly relates to security classifications is A.R. 802(II)(F) which provides:

> The Assignment Committee shall also be responsible for assigning, reviewing, and changing the security classification of residents, as necessary.

It is apparent from the "as necessary" clause of this provision that the Assignment Committee has complete discretion over security classification decisions. Since A.R. 802 does not create a justifiable expectation that an inmate will receive or retain any particular security classification, it does not give rise to a constitutionally protected entitlement. *See Arsberry, supra,* 586 F.2d at 46.

Plaintiff argues finally that A.R. 802 creates an entitlement because it delineates particular procedures that must be followed in making and changing assignments. In *Chavis v. Rowe,* 643 F.2d 1281 (7th Cir.), *cert. denied,* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981), the Seventh Circuit held that a regulation which establishes procedures for the exercise of discretion, without setting limitations on the range of discretion, does not create an

entitlement sufficient to invoke due process safeguards. *Id.* at 1290. Thus, there is no merit to plaintiff's argument that assignment procedures in themselves confer an interest of entitlement in prison security classifications.

Because plaintiff's interest in his prison security classification is not one which is subject to due process protections, Shiflet's unilateral decision to use the allegedly false information provided by Fritschel as a basis for changing plaintiff's security classification is not subject to challenge under section 1983. *See Rosati v. Haran,* 459 F.Supp. 1148, 1160–61 (E.D.N.Y.1977). As the complaint fails to state a claim of constitutional magnitude against either Shiflet or Fritschel, the Court finds no need to assist plaintiff in obtaining service over them.

In conclusion, the Court grants defendant Mulcrone's motion to dismiss. Finding no legal merit to the claims against defendants Fritschel and Shiflet, the Court, on its own motion, dismisses the complaint against them pursuant to 28 U.S.C. § 1915(d). Accordingly, the action is dismissed in its entirety. It is so ordered.