**Brian K. MEYER, Plaintiff,**

v.

**Janet RENO, Attorney General of the United States; Kathleen Hawk, Director, Federal Bureau of Prisons; R.M. Booher, Inmate Systems Manager, F.C.I. Memphis; Ray Warren, Raul Zambrano, and R. Robin Stickler, Assistant State Attorneys, Florida Seventh Judicial Circuit, and Unknown Other Defendants, Defendants.**

**Civil Action No. 95–1748 (CRR).**

United States District Court,
District of Columbia.

Jan. 4, 1996.

Rudolph Contreras, Assistant United States Attorney, Civil Division, with whom Eric H. Holder, United States Attorney for the District of Columbia, was on the brief, for the defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court in the above-captioned case is the defendants' Motion to Dismiss. Upon careful consideration of the parties' pleadings, the entire record herein, and the applicable law with respect thereto, the Court will grant the defendants' Motion.

## I. BACKGROUND

The plaintiff, currently incarcerated at the Sandstone Federal Correctional Institution at Sandstone, Minnesota, brings this action *pro se* and *in forma pauperis,* alleging that the defendants acted in concert and under the color of state law to deprive him of his "civil and constitutional rights." The gravamen of the plaintiff's claim is that the defendants conspired to secure detainers against him from local authorities in Florida which, in turn, "negatively affected [his] programming and barred plaintiff from 'boot camp' effectively keeping [him] in a higher custody classification and subjecting [him] to longer incarceration than a minimum custody prisoner may have without a detainer." *See* Complaint, Attachment, p. 3. The plaintiff seeks "punitive and compensatory damages in excess of $50,000." *Id.*

## II. DISCUSSION

The plaintiff does not invoke any basis for recovery nor does he indicate whether he is suing the defendants in their individual or official capacities. While he alleges that the defendants acted under color of state law, a number of the defendants are federal employees. Thus, assuming that the plaintiff is seeking relief against the defendants in their individual capacities, it is unclear whether the plaintiff is suing under 42 U.S.C. § 1983 or directly under the Constitution pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971). Furthermore, if the de-

Brian K. Meyer, pro se.

fendant is suing the defendants in their official capacities, he does not identify the basis for any such action.

 Consistent with the liberal treatment generally afforded *pro se* litigants, the Court will consider several possible constructions of the plaintiff's allegations.[1] However, notwithstanding the liberal construction of the plaintiff's Complaint, it is still subject to dismissal. The Court is unable to exercise personal jurisdiction over the nonresident defendants, venue does not lie in this district for any *Bivens* or § 1983 claim, and the Complaint fails to state a claim upon which relief can be granted. Sovereign immunity bars any claims against the defendants in their official capacities. Furthermore, the defendants are entitled to qualified immunity.

### A. The plaintiff's claims must be dismissed for want of jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

### 1. The Court cannot exercise jurisdiction over defendants Booher, Warren, Zambrano, and Stickler.

 The District of Columbia long arm statute, D.C.Code § 13–423, is the only basis upon which personal jurisdiction may be obtained over defendants who do not reside within or maintain a principal place of business in the District of Columbia. *Reuber v. United States*, 750 F.2d 1039, 1049 (D.C.Cir. 1984). The statute provides that a court in the District of Columbia may exercise personal jurisdiction over a defendant with regard to a claim arising from the defendant's

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [or she] regularly does or solicits business, [or] engages in any other persistent course of conduct . . . in the District of Columbia.

D.C.Code § 13–423(a)(1)–(4) (1981).

 Defendants Booher is an employee of the Federal Bureau of Prisons who works at the FCI Memphis in Memphis, Tennessee. Defendants Warren, Zambrano, and Stickler are Florida State Attorneys. Because these defendants are not alleged to conduct any business or make any contracts for services in the District of Columbia and because no injury is alleged to have been suffered in the District of Columbia, the Court cannot exercise jurisdiction over them.

### 2. Venue does not lie in this district for any potential *Bivens* or § 1983 claim.

28 U.S.C. § 1391(e), the applicable venue provision for suits against federal officials in

---

1. It is well established that 42 U.S.C. § 1983, which provides a cause of action for violations of constitutional rights accomplished under color of state law, does not provide a basis for suit for actions taken under color of federal law. *See Stonecipher v. Bray*, 653 F.2d 398 (9th Cir.1981), *cert. denied*, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982); *Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir.1980). And while federal employees, like private individuals, presumably act under color of state law if they act in concert with state officials to deprive a person of his or her civil liberties, *see Billings v. United States*, 57 F.3d 797, 801 (9th Cir.1995) (citing *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir.1989), *cert. denied*, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990); *Lopez v. Dep't of Health Srvcs*, 939 F.2d 881, 883 (9th Cir.1991)), there is no evidence that the federal defendants have acted under color of state law within the meaning of § 1983. " 'Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.' " *Id.* (quoting *Scott v. Rosenberg*, 702 F.2d 1263, 1269 (9th Cir.1983), *cert. denied*, 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984)). The plaintiff merely alleges that the the detainers were executed under state law, not that the federal defendants have any authority thereunder. Accordingly, because the plaintiff does not present any basis upon which to assert a *Bivens* claim against the state defendants or a § 1983 claim against the federal defendants, the Court will construe the plaintiff's Complaint as setting forth two separate claims: a § 1983 claim against the state defendants and a *Bivens* claim against the federal defendants.

their official capacities, is inapplicable to suits against such officials in their individual capacities; rather, venue in such suits is governed by 28 U.S.C. § 1391(b), which provides that

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

██ Because all of the federal defendants do not reside in the same state, venue cannot lie in this district under § 1391(b)(1). Further, because none of the alleged events or omissions giving rise to the plaintiff's claims took place in the District of Columbia, but rather in Tennessee and/or Florida, venue cannot lie in this district under § 1391(b)(2).

Any potential claim under § 1983 suffers from the same deficiency. *See Flanagan v. Shively,* 783 F.Supp. 922, 935–36 (M.D.Pa. 1992) (only proper venue for civil rights suit brought by prison inmate against prison officials, who resided in several different states, was in district where claim arose). Therefore, any potential § 1983 claim against either the federal or state defendants is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(3).

### 3. The plaintiff fails to state a claim upon which relief can be granted.

### a. The plaintiff's claims against defendants Reno and Hawk must be dismissed because respondeat superior may not be the basis of a § 1983 or *Bivens* suit.

██ Absent any allegations that defendants Reno and Hawk personally participated in the events which gave rise to the plaintiff's claims, or any corroborative allega-

tions to support the inference that these defendants had notice of or acquiesced in the improper securing of detainers against the plaintiff by their subordinates, dismissal is appropriate. *See Haynesworth v. Miller,* 820 F.2d 1245, 1259 (D.C.Cir.1987) (fellow government employees cannot be held liable under the theory of respondeat superior for either constitutional or common law torts); *Smith–Bey v. District of Columbia,* 546 F.Supp. 813, 814 (D.D.C.1982) (same). Respondeat superior has been consistently rejected as a basis for the imposition of § 1983 or *Bivens* liability. *See, e.g., Monell v. Dep't of Social Srvcs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 375–76, 96 S.Ct. 598, 606–07, 46 L.Ed.2d 561 (1976); *Boykin v. District of Columbia,* 689 F.2d 1092, 1097–99 (D.C.Cir.1982); *Tarpley v. Greene,* 684 F.2d 1, 9–11 (D.C.Cir.1982). Therefore, any potential § 1983 or *Bivens* claims against these defendants, whose only relationship to the instant litigation is their ultimate supervisory status, must be dismissed.

### b. The plaintiff's conspiracy allegation is too generalized and conclusory to state a claim upon which relief can be granted.

██ To the extent that the plaintiff suggests the existence of a conspiracy between the Defendants and others, his allegations fail to state a claim upon which relief can be granted. As the United States Court of Appeals for the District of Columbia Circuit has observed,

[u]nsupported factual allegations which fail to specify in detail the factual basis necessary to enable [defendants] to intelligently prepare their defense, will not suffice to sustain a claim of governmental conspiracy to deprive [plaintiffs] of their constitutional rights.

*Martin v. Malhoyt,* 830 F.2d 237, 258 (D.C.Cir.1987). The plaintiff fails to assert any factual basis to support the conclusion that a conspiracy existed. Therefore, the plaintiff's conspiracy claims will be dismissed for failure to state a claim upon which relief can be granted.

**16**

### c. The plaintiff fails to identify an interest sufficient to trigger the Due Process Clause.

There is no protected liberty interest in obtaining or maintaining a particular security classification. Therefore, the plaintiff fails to state a cognizable claim with respect to the alleged failure to enroll him in a program that would result in his incarceration at a lower security level.

Liberty interests protected by the Fourteenth Amendment may arise directly from the Due Process Clause itself or from the laws of the states. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989); *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983). However, "lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Helms,* 459 U.S. at 467, 103 S.Ct. at 869. *See also Hernandez v. Coughlin,* 18 F.3d 133, 136–37 (2d Cir.1994). Thus, the Court has held that an inmate has no inherent liberty interest in commutation of his sentence, *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981); in being paroled, *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); in receiving good-time credit for satisfactory behavior while in prison, *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); in remaining in one correctional institution rather than another, *Olim v. Wakinekona,* 461 U.S. 238, 248, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); or in avoiding "administrative" (nonpunitive) segregation from the general prison population, *Helms,* 459 U.S. at 468, 103 S.Ct. at 869. *But cf. Vitek v. Jones,* 445 U.S. 480, 491–94, 100 S.Ct. 1254, 1263–65, 63 L.Ed.2d 552 (1980) (holding that prisoner retained a "residuum of liberty" that was infringed by his summary transfer to a mental hospital).

The plaintiff does not contend that he has an inherent right to participate in the boot camp. Rather, he contends that the defendants, by issuing detainers against him, have effectively kept him in a higher custody classification and thereby subjected him to longer incarceration than a minimum custody prisoner faces in the absence of such detainers, thus depriving him of a liberty interest. In essence, the plaintiff claims that the Bureau of Prisons promises participants in its boot camp programs that their successful completion of such a program will lead to their early release and that it has thereby conferred an enforceable liberty interest on eligible participants.

In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not itself create in an inmate a protected interest in being confined in the general prison population. *Id.* at 467–68, 103 S.Ct. at 869–70. Instead, the Clause standing alone requires only that an inmate be confined under conditions consistent with his sentence, *id.* at 468, 103 S.Ct. at 869 (citing *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)), and "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," *id.* *See also Olim v. Wakinekona,* 461 U.S. 238, 247, 103 S.Ct. 1741, 1746, 75 L.Ed.2d 813 (1983) (transfer for confinement in another state is within normal range of custody); *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (transfer within state is within normal range of custody); *cf. Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (transfer to mental hospital is not within normal range of custody).

A state may create by statute or regulation an interest protected by the Due Process Clause even though the same interest is not among those protected by the Clause standing alone. *See Hewitt,* 459 U.S. at 470–71, 103 S.Ct. at 870–71; *Vitek,* 445 U.S. at 487–92, 100 S.Ct. at 1260–64. However, as the Supreme Court recently made clear in *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), while such language may create interests which are protected by the Due Process Clause, "these interests will be generally limited to freedom

from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at ——, 115 S.Ct. at 2300; *see also Montanye,* 427 U.S. at 242, 96 S.Ct. at 2547 ("As long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed on him [or her] and are not otherwise violative of the Constitution, the Due process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").

As the Court noted in *Sandin,* the methodology used in *Hewitt* has unduly shifted the focus of the protected interest inquiry from one based upon the nature of the deprivation to one based upon language of a particular statute. Sandin, —— U.S. at ——, 115 S.Ct. at 2299. This approach has "encouraged prisoners to comb regulations in search of mandatory regulations on which to base entitlements to various state privileges," *id.,* created "disincentives for States to codify prison management procedures in the interest of uniform treatment," *id.,* and "led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone," *id.*

■ Therefore, as a threshold matter, courts should determine whether the "conditions suffered were expected within the contour of the actual sentence imposed." *Id.,* at —— n. 9, 115 S.Ct. at 2301 n. 9. Applying that methodology to the facts in *Sandin,* the Court determined that prison regulations on confinement of an inmate did not create a liberty interest. In making its decision, the Court did not rely on the language of the regulations for mandatory language and substantive predicates. —— U.S. at ——, 115 S.Ct. at 2301; *cf. Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871–72. Rather, the Court focused on the particular discipline imposed—disciplinary segregation for thirty days—and held that it "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty inter-

est." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301. The Court reached this conclusion after reviewing the record (the district court proceeding was resolved by summary judgment) and finding that, "with insignificant exceptions," the inmate's disciplinary segregation "mirrored those conditions imposed upon inmates in administrative and protective custody." *Id.* The Court supported this conclusion by discussing the various custodial conditions at the particular prison in question and by demonstrating that the plaintiff's segregation "did not work a major disruption in his environment." *Id.*

■ Post–*Sandin* courts have similarly rejected the notion that inmates have a protected liberty interest in remaining among the general population. *See, e.g., Mujahid v. Meyer,* 59 F.3d 931, 932 (9th Cir.1995) (Disciplinary segregation for fourteen days did not constitute atypical deprivation sufficient to trigger Due Process Clause.); *Seltzer–Bey v. Delo,* 66 F.3d 961, 964 (8th Cir.1995) (The Due Process Clause does not give an inmate a liberty interest in remaining in the general population and the plaintiff failed to identify any regulations or statutes that create such a liberty interest.). *But cf. Gotcher v. Wood,* 66 F.3d 1097, 1100–01 (9th Cir.1995) (Reversing district court on its dismissal of an inmate's claim with regard to disciplinary segregation, when, "[i]n contrast to the detailed record in *Sandin,* the record [on] appeal is insufficient for a determination of whether the disciplinary segregation at issue imposed an 'atypical and significant hardship [on the inmate] in relation to the ordinary incidents of prison life.'" (quoting *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300)). There is nothing to suggest a contrary result here. The plaintiff does not have a protected liberty interest in a particular security classification, which is analogous to a claimed interest in remaining among the general population. *Slezak v. Evatt,* 21 F.3d 590, 594 (4th Cir.1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution.'" (quoting *Hewitt,* 459

18

U.S. at 468, 103 S.Ct. at 869 (internal quotation omitted))), *cert. denied,* —— U.S. ——, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); *Newell v. Brown,* 981 F.2d 880, 883 (6th Cir.1992) (same), *cert. denied,* —— U.S. ——, 114 S.Ct. 127, 126 L.Ed.2d 91 (1993); *Larson v. Mulcrone,* 575 F.Supp. 1, 3 (N.D.Ill.1982) (same), *aff'd,* 723 F.2d 914 (7th Cir.1983); *cf. Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976). Accordingly, any due process claim predicated on such an interest fails to state a claim upon which relief can be granted. *Accord Knox v. Lanham,* 895 F.Supp. 750, 759 (D.Md.1995) (observing, without deciding, that, under *Sandin,* inmates do not have a protected liberty interest in remaining in their particular security classifications).

### B. The defendants are entitled to qualified immunity.

■ Prison officials enjoy qualified immunity from constitutional and statutory claims. *Cleavinger v. Saxner,* 474 U.S. 193, 206, 106 S.Ct. 496, 503, 88 L.Ed.2d 507 (1985). As the Supreme court made clear in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818, 102 S.Ct. at 2738; *see also Hunter v. District of Columbia,* 943 F.2d 69, 75 (D.C.Cir.1991).

■ "In order for a person to have a clearly established right, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Mahers v. Harper,* 12 F.3d 783, 785 (8th Cir.1993) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. (citation omitted). This analysis "focuses on the objective legal reason-

ableness of an official's acts." *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738.

■ The Court must decide whether the plaintiff had a clearly established right not to have detainers issued against him. As a threshold matter, the Court notes that there are no outstanding detainers against the plaintiff. *See* Federal Bureau of Prisons, Sentry Report, attached to Defendants' Motion as Attachment 1. Thus, the factual predicate for the plaintiff's claims is absent. Even assuming that there were outstanding detainers against him, however, the plaintiff has no clearly established right to be free of them. Indeed, in light of the Court's conclusion that the plaintiff fails to state a claim upon which relief can be granted with respect thereto, *a fortiori* he fails to demonstrate that the defendants violated any of his "clearly established rights."

### C. Sovereign immunity bars any claims against the United States Department of Justice, the Federal Bureau of Prisons, or the individual defendants in their official capacities.

■ To the extent that the plaintiff seeks damages against the United States or the individual federal defendants in their official capacities, his claims must be dismissed absent a waiver of sovereign immunity. The inherent sovereign immunity of the United States protects it and its agencies from suit absent an express waiver. *See United States v. Nordic Village,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Sovereign immunity also bars suits for money damages against officials in their official capacities absent a specific waiver by the government. *Clark v. Library of Congress,* 750 F.2d 89, 101–02 (D.C.Cir.1984). Because the Court cannot discern from the plaintiff's Complaint any colorable basis for such a waiver, to the extent the plaintiff asserts any claims for damages against the United States Department of Justice, the United States Bureau of Prisons, or the federal defendants in their official capacities, such claims must be dismissed for lack of subject matter jurisdiction.

## III. CONCLUSION

Upon careful consideration of the parties' pleadings, the entire record herein, and the applicable law with respect thereto, the Court will enter an Order of even date herewith consistent with the foregoing Memorandum Opinion GRANTING the Defendants' Motion to Dismiss.