Stephen D. FREEMAN, Lorraine A. Fairchild, Plaintiffs,

v.

Allen P. FALLIN et al., Defendants.

Civil Action No. 02–0386 (RMU).

United States District Court, District of Columbia.

March 24, 2003.

Stephen Freeman, Lorraine A. Fairchild, Norco, CA, for pro se, plaintiff.

Rolando N. Valdez, Gail A. Perry, Rolando N. Valdez, Washington, DC, for defendants.

### *MEMORANDUM OPINION*

URBINA, District Judge.

#### DENYING THE DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

This *Bivens*[1] action comes before the court on the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (3), (4) and (6). The *pro se* plaintiffs, Stephen Freeman and Lorraine Fairchild ("the plaintiffs"), are former criminal investigators with the Office of the Inspector General ("OIG") of the United States Environmental Protection Agen-

---

**1.** *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

cy ("EPA"). The defendants, who are sued in their individual capacities, are former OIG Assistant Inspector General for Investigations Allan Fallin, OIG Deputy Assistant Inspector General for Investigations Emmett Dashiell Jr., OIG Assistant Inspector General for Management John Jones, OIG Counsel to the Inspector General Mark Bialek, and Department of Defense Criminal Investigator Arthur Hymons. The plaintiffs' complaint alleges that these officials (collectively, "the defendants") manipulated EPA's random drug-testing procedures to target the plaintiffs for testing, thereby violating their Fourth Amendment right to freedom from unreasonable search and seizure. In response, the defendants filed a motion to dismiss for lack of subject-matter jurisdiction, improper venue, insufficient service of process, and failure to state a claim on which relief may be granted. For the following reasons, the court denies the defendants' motion to dismiss.

## II. BACKGROUND

### A. Factual Background

From 1999 to 2000, both plaintiffs worked as criminal investigators for OIG, with plaintiff Freeman assigned to the San Francisco office and plaintiff Fairchild working in the District of Columbia office. Compl. ¶¶ 3–4, 10–11. As criminal investigators engaged in law enforcement and authorized to carry firearms, both plaintiffs were subject to random drug urinalysis testing by OIG, their employer. Defs.' Mot. to Dismiss ("Defs.' Mot.") at 9–10.

According to the plaintiffs, at some time during fall 1999 and winter 2000, then-Assistant Inspector General ("AIG") for Investigations Fallin and Deputy Assistant Inspector General for Investigations Dashiell received what the plaintiffs describe as frivolous and unsubstantiated allegations concerning the plaintiffs' off-duty drug use. Compl. ¶¶ 12–13. The plaintiffs assert that AIG Fallin and Deputy AIG Dashiell then conferred with AIG for Management Jones, the coordinator for agency drug testing, to design a "random" drug test that would include the plaintiffs. Id. ¶ 15. Instead of following EPA policy by drawing a random sampling based on a neutral criterion (such as social security numbers), AIG Fallin allegedly chose last names beginning with the letter F, thereby ensuring that the plaintiffs would be among those tested. Id. ¶¶ 15–17.

On February 28, 2000, Ms. Fairchild received notice that in accordance with EPA's drug testing policy, she had been selected for random drug urinalysis testing. Id. ¶ 18. The plaintiffs state that although Ms. Fairchild reported to the testing facility, she attempted to evade the test due to concerns about her privacy regarding her prescribed medications. Id. According to the plaintiffs, her efforts were successful: the lab technician did not witness her provision of the sample, and thus had to destroy her sample. Id. The plaintiffs contend that unbeknownst to Ms. Fairchild, her efforts to evade the test were reported to AIG Fallin, Deputy AIG Dashiell, and AIG Jones. Id.

According to the plaintiffs, AIG Dashiell subsequently took the unusual step of asking Investigator Hymons, a personal friend, to conduct the investigation. Id. ¶ 19. On March 8, 2000, Investigator Hymons interviewed Ms. Fairchild's former boyfriend, who provided a "complicated and implausible story" regarding wiretaps implicating Ms. Fairchild in drug use. Id. ¶ 21. The following day, at a meeting between Investigator Hymons, AIG Jones, and OIG Counsel Bialek, AIG Jones indicated that both plaintiffs were scheduled to undergo testing in the next few days, and OIG Counsel Bialek asked Investigator Hymons to "present this matter" to the

U.S. Attorney. *Id.* ¶¶ 22–23. On March 10, 2000, Investigator Hymons allegedly briefed an assistant U.S. attorney ("AUSA") for the Southern District of Maryland on the allegations against the plaintiffs, and the AUSA indicated that he would make a decision regarding prosecution once the test results were available. *Id.* ¶ 25

During the next two weeks, both plaintiffs underwent urinalysis testing. In San Francisco, Mr. Freeman provided a sample without incident on March 13, 2000. *Id.* ¶ 27. In the District of Columbia, Ms. Fairchild reported twice for testing, failing to provide a sufficient sample on March 9, 2000, but providing a sufficient sample on March 20, 2000. *Id.* ¶ 24. According to the plaintiffs, at some date between the two tests, Ms. Fairchild was relieved of her badge, weapon, credentials, and OIG access, and ordered to report to EPA headquarters for an indefinite period. *Id.* ¶ 26.

On March 20 and 24, respectively, AIG Jones allegedly informed Investigator Hymons that test results for Mr. Freeman and Ms. Fairchild were negative. *Id.* ¶¶ 29, 32. The plaintiffs assert that Investigator Hymons then reported the results to the AUSA, who indicated that he would not go forward with prosecution. *Id.* ¶ 33.

### B. Procedural History

On February 28, 2002, the plaintiffs filed a complaint alleging that the defendants violated the plaintiffs' Fourth Amendment rights and requesting $5 million in compensatory and punitive damages. On July 1, 2002, the defendants moved to dismiss for lack of subject-matter jurisdiction, improper venue, insufficient service of process, and failure to state a claim on which relief may be granted.

On October 24, 2002, the court issued a memorandum opinion granting the *pro se* plaintiffs a brief extension of time to per-

fect service upon defendants Jones, Bialek, and Fallin. Mem. Op. dated Oct. 24, 2002. Since then, the plaintiffs have perfected service on all plaintiffs. Pls.'s Resp. to Mem. Op. The court now considers the remaining issues of lack of subject-matter jurisdiction, improper venue, and failure to state a claim.

## III. ANALYSIS

### A. The Court Denies the Defendants' Motion to Dismiss For Lack of Subject–Matter Jurisdiction

#### 1. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Tremel v. Bierman & Geesing, L.L.C.,* 2003 WL 721911, at *2 (D.D.C. 2003); *Rasul v. Bush,* 215 F.Supp.2d 55, 61 (D.D.C.2002). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court should accept as true all of the factual allegations contained in the complaint. *Scandinavian Satellite Sys., AS v. Prime TV Ltd.,* 291 F.3d 839, 844 (D.C.Cir.2002) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, however, a court resolving a motion to dismiss under Rule 12(b)(1) must give the complaint's factual allegations closer scrutiny than required for a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C.2001) (citing 5A Fed. Prac. & Proc. Civ. 2d

§ 1350). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Instead, to determine whether it has jurisdiction over the case, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992).

## 2. The Court Has Subject–Matter Jurisdiction Because the Plaintiffs' Claim Arises under the Constitution

■ In this case, the defendants briefly challenge the subject-matter jurisdiction of this court. Defs.' Mot. at 2, 6. The plaintiffs allege two bases for subject-matter jurisdiction. Compl. ¶ 1. First, the plaintiffs assert that this court has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. *Id.* It is a well-established rule, however, that the Declaratory Judgment Act is not an independent source of federal jurisdiction. *C & E Servs., Inc. v. Dist. of Columbia Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C.Cir. 2002) (citing *Skelly Oil Co. v. Phillips Petroleum Co*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)). Therefore, the plaintiffs' claim of subject-matter jurisdiction under this statute is invalid.

■ Second, the plaintiffs allege subject-matter jurisdiction under the federal-question statute. Compl. ¶ 1 (citing 28 U.S.C. § 1331). Section 1331 provides that "district courts ... have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, the plaintiffs allege a civil cause of action that is based on an alleged violation of the Fourth Amendment. Compl. ¶¶ 36–72. Because the claim "aris[es] under" the

Constitution, this court has subject-matter jurisdiction under the federal question statute. *E.g., Cook v. Babbitt*, 819 F.Supp. 1, 4 (D.D.C.1993) (finding subject-matter jurisdiction for claim arising under the Fifth Amendment's Due Process Clause).

## B. The Court Denies the Defendants' Motion to Dismiss For Improper Venue

### 1. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(3)

■ Generally, in considering a motion to dismiss under Rule 12(b), the court construes the plaintiff's allegations favorably. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Walker v. Jones*, 733 F.2d 923, 925–26 (D.C.Cir.1984). To prevail on a motion to dismiss for improper venue, facts must be presented that will defeat the plaintiff's assertion of venue. *2215 Fifth St. Assocs. v. U–Haul Int'l, Inc.*, 148 F.Supp.2d 50, 54 (D.D.C.2001) (citing 5A FED. PRAC. & PROC. CIV. 2d § 1352). Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper. 5A FED. PRAC. & PROC. CIV. 2d § 1352; *e.g., Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979).

### 2. Venue Is Proper Because a Substantial Part of the Events Occurred in this District

The plaintiffs allege that venue is proper in this district pursuant to 28 U.S.C. § 1391, the general venue statute.[2]

---

**2.** The plaintiffs allege that venue is proper    pursuant to section 1391(e). Compl. ¶ 2. Sec-

Compl. ¶ 2. In support of this assertion, the plaintiffs note that the defendants' conduct occurred in this district and constitutes a substantial portion of the events giving rise to Mr. Freeman's claim. Pls.' Opp'n at 6–7. In response, the defendants contend that under section 1391(b), venue is improper in this district as to Mr. Freeman's claims because a substantial portion of the events—namely, the drug testing and the discussions with the AUSA—took place in California and Maryland. Defs.' Mot. at 12, 18; Defs.' Reply at 11.

Under section 1391(b), venue in a federal-question case is proper in any jurisdiction (1) where any defendant resides, if all defendants reside in the same state, (2) where a substantial part of the events or omissions giving rise to the claim occurred, or (3) where any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b)(1)-(3). Courts have found venue proper in *Bivens* actions where substantial conspiring, planning, or supervision of an event occurred, even if the event itself took place in another judicial district. *E.g., Egervary v. Young,* 159 F.Supp.2d 132, 151 (E.D.Pa.2001) (finding venue proper in a district where the federal defendants "conspired with, gave substantial assistance or encouragement to, and/or ordered or induced" the taking of a child in an international custody dispute); *Clayton v. Prudential Ins. Co. of Am.,* 554 F.Supp. 628, 631 (S.D.Tex.1982) (concluding that venue was proper in a district where a

substantial amount of investigatory conversation occurred).

■ Here, the gravamen of Mr. Freeman's claim against the defendants is that they conspired to order drug testing that subverted agency testing policy, and thereby violated the plaintiff's Fourth Amendment rights. Compl. ¶¶ 38–40, 46–50, 56–60, 66–71. From the complaint, it appears that the discussions between AIG Fallin, Deputy AIG Dashiell, and AIG Jones regarding the design and administration of the plaintiffs' tests took place in this district. *Id.* ¶ 15. Discussions between Investigator Hymons, AIG Jones, and OIG Counsel Bialek, regarding the schedule for the plaintiffs' testing also occurred in this district. *Id.* ¶¶ 22–23. Therefore, the court concludes that a substantial portion of the events giving rise to Mr. Freeman's claim occurred in this district and that as a result, venue is proper under section 1391(b)(2). *Egervary,* 159 F.Supp.2d at 151.

## D. The Court Denies the Defendants' Motion to Dismiss for Failure to State a Claim

### 1. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6)

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. FED.R.CIV.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80

---

tion 1391(e) governs venue in civil suits against government officials "acting in [ ] official capacity or under color of legal authority." 28 U.S.C. § 1391(e). It does not authorize venue for civil suits seeking damages against government officials acting in their individual capacity, however. *Id.; Stafford v. Briggs,* 444 U.S. 527, 542, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980); *Cameron v. Thornburgh,* 983 F.2d 253, 256 (D.C.Cir.1993).

Thus, the plaintiffs cannot rely on section 1391(e) to establish venue in this *Bivens* action. Given the wide latitude afforded to *pro se* plaintiffs, and the fact that the defendants' venue challenge focuses on section 1391(b) rather than section 1391(e), the court instead considers whether venue is proper under section 1391(b). *Moore v. Agency for Int'l Dev.,* 994 F.2d 874, 876 (D.C.Cir.1993); *Meyer v. Reno,* 911 F.Supp. 11, 14 (D.D.C.1996).

(1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. FED.R.CIV.P. 12(b)(6); *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. The plaintiff need not plead the elements of a prima-facie case in the complaint. *Swierkiewicz,* 534 U.S. at 511–14, 122 S.Ct. 992; *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C.Cir.2000). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. District of Columbia,* 73 F.3d 418, 422 (D.C.Cir.1996). In deciding such a motion, the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. The court need not accept as true legal conclusions cast as factual allegations. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994).

### 2. Legal Standard for a *Bivens* Claim and the Qualified Immunity Defense

A plaintiff may bring a civil action for money damages against a federal official in his or her individual capacity for violation of the plaintiff's constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 389, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Federal officials may be entitled to a defense of qualified immunity, however. *Wilson v. Layne,* 526 U.S. 603, 614, 119

S.Ct. 1692, 143 L.Ed.2d 818 (1999) (citing *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727). Qualified immunity "shield[s officials] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* It "provides not simply a defense to liability, but also an entitlement not to stand trial or face the other burdens of litigation." *Farmer v. Moritsugu,* 163 F.3d 610, 613 (D.C.Cir.1998) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

■ In evaluating a *Bivens* claim to which a defendant has raised the qualified immunity defense, the court must follow a two-pronged analysis. *Butera v. District of Columbia,*[3] 235 F.3d 637, 646 (D.C.Cir. 2001) (citing *Wilson,* 526 U.S. at 609, 119 S.Ct. 1692). First, as a threshold matter, the court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right. *Id.; Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In defining an "actual constitutional right," a court must be careful to avoid defining the right in overly general terms "lest [it] strip the qualified immunity defense of all meaning." *Butera,* 235 F.3d at 646. Instead, the court must identify the right with the appropriate level of specificity so as to allow officials to reasonably anticipate when their conduct may give rise to liability for damages. *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Second, the court must decide whether the constitutional right was clearly established at the time of the defendant's action. *Id.* A right is

---

**3.** *Butera* involved a suit brought against state officials pursuant to 42 U.S.C. § 1983. *Butera,* 235 F.3d at 640–41. The Supreme Court has held, however, that there is no distinction between a *Bivens* suit and suit brought under

section 1983 for purposes of immunity. *Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Gray v. Poole,* 243 F.3d 572, 577 n. 4 (D.C.Cir.2001).

"clearly established" if "the contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Wilson,* 526 U.S. at 614–15, 119 S.Ct. 1692); *see Crawford–El v. Britton,* 523 U.S. 574, 591, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (stating that "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct"). Although the specific action in question need not have been held unlawful by the courts, its unlawfulness in light of pre-existing law must have been apparent to the defendant. *Butera,* 235 F.3d at 646 (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034).

### 3. The Plaintiffs Have Stated a *Bivens* Claim and The Defendants Are Not Entitled to Qualified Immunity

In this case, the plaintiffs allege that the defendants deprived them of their Fourth Amendment rights by subverting EPA's suspicionless drug testing procedures to gather evidence of alleged drug use for use in criminal proceedings. *E.g.,* Compl. ¶¶ 38–40, 46–50, 56–60, 66–71; Pls.' Opp'n at 2. In support of their claim, they list a series of specific, chronological "facts" detailing how, after receiving unsubstantiated allegations of the plaintiffs' drug use, the defendants manipulated EPA's random drug testing procedures in an effort to gather evidence with which to prosecute the plaintiffs. Compl. ¶¶ 12–33. Based on these factual allegations, which are clearly and lucidly set forth in the complaint,[4] the plaintiffs conclude that their Fourth Amendment rights were violated. *Id.* ¶¶ 38–40, 46–50, 56–60, 66–71. In response, the defendants assert that the plaintiffs have failed to assert facts showing a violation of their constitutional rights, and that the defendants are entitled to qualified immunity.[5] Defs.' Mot. at 7–14, 19; Defs.' Reply at 9, 11–12.

The questions before the court, therefore, are (1) whether the plaintiffs have alleged an actual Fourth Amendment right to protection against the use of agency suspicionless drug testing procedures to

---

4. Comparing the plaintiffs' complaint to that in a recent Supreme Court case, the defendants argue briefly that the plaintiffs' complaint consists of general statements that fail to put the defendants on notice of the alleged constitutional violations. Defs.' Mot. at 7–8 (citing *Christopher v. Harbury,* 536 U.S. 403, 416, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002)). In *Christopher,* the plaintiff "did not come even close to stating a constitutional claim" in her 28–count, "nearly unintelligible" complaint that left the district court and the defendants guessing as to the unstated causes of action and remedies. *Christopher,* 536 U.S. at 416, 122 S.Ct. 2179. In this case, the plaintiffs, albeit *pro se,* have filed a straightforward complaint that puts the defendants on notice of their alleged violations. Any comparison between the two complaints is spurious.

5. In their submissions, the defendants characterize the plaintiffs' claim either as a challenge to the constitutionality of random drug testing or as a challenge to the constitutional-ity of criminal prosecutions. *E.g.,* Defs.' Mot. at 7 ("Plaintiffs assert that requiring them to submit to drug testing violated their Fourth Amendment rights not to be subjected to any unreasonable searches and seizures."); Defs.' Reply at 4 ("Plaintiffs do not offer any support for their argument that a criminal prosecution constitutes a Fourth Amendment violation."). The plaintiffs repeatedly state, however, that their challenge is not to the validity of random drug testing, but to the defendants' subversion of the EPA random drug testing procedures to gather evidence for criminal prosecution. Compl. ¶¶ 38–40, 46–50, 56–60, 66–71; Pls.' Opp'n at 3–4.

At another point, the defendants assert that the plaintiffs' claim relies on 42 U.S.C. § 1983, which provides for a cause of action against state, not federal, officials. Defs.' Mot. at 18–19. The plaintiffs' complaint never mentions Section 1983, however. *See generally* Compl.; *see* Pls.' Opp'n at 4–5.

gather evidence for criminal proceedings, and, if so, (2) whether that right was clearly established at the time of the defendants' actions. *Butera*, 235 F.3d at 646.

Looking to Supreme Court precedent, the court first concludes that the plaintiffs have sufficiently alleged such a right. The Fourth Amendment to the Constitution protects against "unreasonable" searches and seizures. U.S. CONST. amend. IV. To be reasonable, a search generally must be supported by a warrant issued upon probable cause. *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). But there are exceptions to this general rule. *Ferguson v. City of Charleston*, 532 U.S. 67, 81 n. 15, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001). One such exception applies when a search serves "special governmental needs" beyond the normal needs of law enforcement; in that case, the search may be reasonable despite the absence of a warrant, probable cause, or even individualized suspicion. *Von Raab*, 489 U.S. at 666, 109 S.Ct. 1384; *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 624, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). Accordingly, an agency may subject federal employees engaged in certain safety-sensitive tasks—such as carrying a firearm—to suspicionless urinalysis testing.[6] *Von Raab*, 489 U.S. at 679, 109 S.Ct. 1384; *Skinner*, 489 U.S. at 624, 109 S.Ct. 1402; *Hartness v. Bush*, 919 F.2d 170, 172 (D.C.Cir.1990).

A critical factor in the validity of suspicionless testing is the non-law enforcement nature of the special need asserted as justification. *Ferguson*, 532 U.S. at 79, 121 S.Ct. 1281. In a recent review of its special-needs cases, the Supreme Court emphasized that in each case, the justification underlying the search was "divorced from the State's general interest in law enforcement," with each search having no law enforcement purpose and little if any entanglement with law enforcement. *Ferguson*, 532 U.S. at 79–80, 81 n. 15, 121 S.Ct. 1281. The Court noted that in the context of special needs, it had never "upheld the collection of evidence for criminal law enforcement purposes." *Id.* at 84 n. 20, 121 S.Ct. 1281. Accordingly, it concluded that the special-needs doctrine was inapplicable in a patient-testing case in which the testing results were turned over to police because the testing was undertaken "for the specific purpose of incriminating" the patients. *Id.* at 1292; *see also id.* at 1299 (Scalia, J., dissenting). This line of precedent makes clear that the Fourth Amendment protects against the use of suspicionless drug testing procedures undertaken for the specific purpose of gathering evidence for criminal proceedings.[7] *Id.*

The second question is whether this right was "clearly established" at the time of the defendants' actions. *Butera*, 235 F.3d at 646. Here, the plaintiffs allege that the defendants' actions took place from fall 1999 to spring 2000. Compl. ¶¶ 12–33. Although the Supreme Court did not decide *Ferguson* until 2001, "the four previous cases in which [it] considered whether comparable drug tests fit within the closely guarded category of constitutionally permissible suspicionless searches" were issued in 1989, 1995, and 1997, well

---

6. Government-compelled urinalysis is a search for purposes of the Fourth Amendment, and therefore must be reasonable. *Stigile v. Clinton*, 110 F.3d 801, 803 (D.C.Cir. 1997).

7. The defendants imply as much in their motion to dismiss. Defs.' Mot. at 4 (noting that "it may be true that the results of random urinalysis drug testing cannot be used in a criminal prosecution").

before the defendants' actions. *Ferguson,* 532 U.S. at 77, 121 S.Ct. 1281 (citing *Skinner,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639; *Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685; *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995); *Chandler v. Miller,* 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997)). Moreover, in each of the four cases, the Court noted specifically that the testing procedures in question protected against release of the test results to third parties, including and especially law enforcement. *Id.* at 78 n. 12, 121 S.Ct. 1281. Accordingly, the right was clearly established and a "reasonably competent public official" involved in agency suspicionless drug testing programs during 1999–2000 should have known of it. *Crawford–El,* 523 U.S. at 591, 118 S.Ct. 1584 (citing *Harlow,* 457 U.S. at 818–819, 102 S.Ct. 2727).

In sum, the court concludes that the plaintiffs have sufficiently alleged an actual Fourth Amendment right, clearly established at the time of the defendants' actions, to protection against the use of suspicionless drug testing procedures to gather evidence for criminal proceedings. *Butera,* 235 F.3d at 646. Accordingly, the plaintiffs have stated a claim on which relief may be granted and defendants' qualified immunity defense fails. *Crawford–El,* 523 U.S. at 591, 118 S.Ct. 1584.

## IV. CONCLUSION

For all these reasons, the court denies the defendants' motion to dismiss. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 24th day of March, 2003.